Austin Norris (SBN 284603)
austin.norris@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Tel: (310) 552-4200
Fax: (310) 552-5900

*[Additional counsel on signature page]*

*Attorneys for WEBTOON and the*
*Individual Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COY BROOKMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WEBTOON ENTERTAINMENT INC., et al.,<br><br>Defendants. | Case No. 2:24-cv-07553-CBM-RAO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT WITH PREJUDICE**<br><br>Complaint Filed:<br>September 5, 2024<br><br>Consolidated Complaint Filed:<br>February 3, 2025<br><br>Judge:      Hon. Consuelo B. Marshall<br>Hearing:    April 22, 2025<br>Time:       10:00 a.m.<br>Courtroom:  8D |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT...........................................................................................................1

        A.      The Challenged Statements Are Not Materially Misleading.................1

        B.      The Challenged MAU, Revenue, and ARPPU Statements Are Not
                Actionable As a Matter of Law...........................................................7

        C.      The Complaint Does Not State a Regulation S-K Claim......................9

III.    CONCLUSION .....................................................................................................11

i
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belodoff v. Netlist, Inc.*,
2009 WL 1293690 (C.D. Cal. Apr. 17, 2009)....................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ...............................................................................8

*In re Dropbox Sec. Litig.*,
2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ......................................................1

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013) ............................................................4, 10

*In re Facebook, Inc. IPO Sec. and Deriv. Litig.*,
986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..................................................................4

*Franchi v. SmileDirectClub, Inc.*,
633 F. Supp. 3d 1046 (M.D. Tenn. 2022) ..........................................................10

*Golubowski v. Robinhood Markets, Inc.*,
2024 WL 269507 (N.D. Cal. Jan. 24, 2024)...............................................4, 6, 10

*Ikeda v. Baidu, Inc.*,
2021 WL 1299046 (N.D. Cal. Apr. 7, 2021).........................................................6

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005).........................................................................1

*Lilien v. Olaplex Holdings, Inc.*,
2025 WL 444254 (C.D. Cal. Feb 7, 2025) .........................................................10

*Loc. 272 Lab.-Mgmt. Pens. Fund v. Walt Disney Co.*,
2025 WL 569230 (C.D. Cal. Feb. 19, 2025).........................................................8

*Mulderrig v. Amyris*,
492 F. Supp. 3d 999 (N.D. Cal. 2020)..................................................................5

*In re NBTY, Inc. Sec. Litig.*,
224 F. Supp. 2d 482 (E.D.N.Y. 2002)...................................................................7

ii

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*In re On24, Inc. Sec. Litig.*,
  2023 WL 7449838 (N.D. Cal. July 7, 2023) ........................................................8

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ................................................................7

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..............................................................8

*Ret. Sys. v. Align Tech, Inc.*,
  39 F.4th 1092 (9th Cir. 2022) ...............................................................8

*Rodriguez v. Gigamon Inc.*,
  325 F. Supp. 3d 1041 (N.D. Cal. 2018)....................................................8

*Rubke v. Capitol Bancorp Ltd*,
  551 F.3d 1156 (9th Cir. 2009) ..............................................................6

*Ryan v. FIGS, Inc.*,
  2024 WL 187001 (C.D. Cal. Jan. 17, 2024)............................................10

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016) ................................................................3

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017)...................................................3

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ..............................................................10

*Sundaram v. Freshworks Inc.*,
  2023 WL 6390622 (N.D. Cal. Sept. 28, 2023)................................1, 10

*Terenzini v. GoodRx Holdings, Inc.*,
  2022 WL 122944 (C.D. Cal. Jan. 6, 2022)..............................................7

*Waswick v. Torrid Holdings, Inc.*,
  2024 WL 3740052 (C.D. Cal. July 23, 2024) ...............................2, 4, 6

*Waswick v. Torrid Holdings, Inc.*,
  2023 WL 9197563 (C.D. Cal. Dec. 1, 2023)............................................6

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022)..................................................................2, 7

iii
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Zee v. Green Dot Corp.*,
  2013 WL 12133841 (C.D. Cal. May 2, 2013).........................................................6

**Rules**

Fed. R. Civ. P. 9.................................................................................................1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
| --- | --- |
| ¶ or Complaint | Consolidated Complaint for Violations of the Federal Securities Laws (ECF 60) |
| WEBTOON | Defendant WEBTOON Entertainment, Inc. |
| Individual Defendants | Junkoo Kim, David Lee, Haejin Lee, Namsum Kim, Jun Masuda, Isabelle Winkles, and Nancy Dubuc |
| Defendants | WEBTOON and the Individual Defendants |
| Mot. | Defendants' Notice of Motion and Motion to Dismiss Consolidated Compliant With Prejudice (ECF 61) |
| Ex. | Exhibits to the Declaration of Austin Norris (ECF 62), unless otherwise noted. |
| Opp'n | Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Consolidated Complaint (ECF 67) |
| IPO | Initial Public Offering |
| RS | Registration Statement |
| MAU | Monthly Active Users |
| ARPPU | Average Revenue Per Paying User |
| YoY | Year over Year |

v

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## I.    INTRODUCTION

The Opposition fails to overcome the dispositive flaws in the Complaint. Plaintiff cannot point to any specific fact that WEBTOON needed to disclose in the RS besides (1) publicly-available data, which WEBTOON had no duty to disclose, and (2) the Company's Q2 2024 results, which Defendants could not possibly have known until after the quarter ended and ***after the IPO***. Plaintiff's allegations that Defendants must have known these results before the IPO and chose to withhold them are purely speculative and fall well short of what is required to sufficiently allege a Section 11 or Item 303 claim.[1]

The Opposition further argues that WEBTOON's disclosure of accurate historical data somehow misled investors about its performance in later periods. It is obvious that past results say ***nothing*** about current or future performance. Plaintiff admits that WEBTOON told investors exactly this, warning that "historical growth rates may not be indicative of [its] future performance." Ex. at 28. And courts "have repeatedly refused to find [the] disclosure of accurate historical data misleading," even if ***less favorable results*** might be predictable in the future. *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *7 (N.D. Cal. Oct. 21, 2020) (citing cases). Otherwise, every company that goes public during a downturn—however minor and transitory—would risk securities liability. The Complaint should be dismissed with prejudice.

## II.    ARGUMENT

### A.    The Challenged Statements Are Not Materially Misleading.

The Opposition concedes that none of the challenged statements were objectively false. Instead, Plaintiff's theory is that the omission of intra-quarter data

---

[1] The Opposition addresses Rule 9(b) in a footnote. Opp'n at 8 n.6. Plaintiff cites only two cases: one is an unpublished Ninth Circuit decision that is unsuitable for citation (*Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674 (9th Cir. 2005)), and the other does not even mention Rule 9(b) (*Sundaram v. Freshworks Inc.*, 2023 WL 6390622 (N.D. Cal. Sept. 28, 2023)). As explained in Defendants' motion, Rule 9(b) applies. But the Complaint fails under any standard.

1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

rendered the statements misleading because the Company's YoY growth rates for certain metrics were lower post-IPO. Opp'n 8–17. Importantly, however, ***none of the challenged statements were about YoY growth***. The Complaint focuses exclusively on YoY growth evidently to find some shred of post-IPO data that deviated from pre-IPO data. But the securities laws regulate ***misleading statements***—they do not require the disclosure of all material financial information. *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022). Defendants did not make any representations about YoY growth or any other future performance. Just the opposite: the RS warned that despite the Company's "rapid growth … in recent periods," investors "***should not rely on [WEBTOON's] historical growth rates as an indication of future performance***." Ex. 3 at 28 (emphasis added).

Plaintiff accuses Defendants of raising "factual challenges," but Defendants' motion merely references the data disclosed to investors that Plaintiff ignores. Opp'n at 2. Because this data is fatal to Plaintiff's securities claim, Plaintiff urges the Court to disregard it. This is improper: a reasonable investor "reads each statement … in light of all its surrounding text, including hedges, disclaimers and apparently conflicting information." *Waswick v. Torrid Holdings, Inc.* ("*Torrid II*"), 2024 WL 3740052, at *6 (C.D. Cal. July 23, 2024). As explained below, Plaintiff has failed to identify any false or misleading statements.

**MAU Statements (¶¶57–59)**: The Opposition concedes that the RS provided accurate historical MAU data showing fluctuations and declines and warned investors that WEBTOON "ha[d] experienced, and "expect[ed] to experience, fluctuations and declines in the size of [its] user base." Ex. 3 at 29. The Opposition also concedes that Q2 2024 MAU results were well within range of past performance. These concessions establish that none of the challenged MAU statements—which are not actionable as a matter of law, *see infra* §II.B—were materially misleading.

Plaintiff claims that Defendants misleadingly "touted" MAU by describing it as "stable" and "durable," which was allegedly in tension with then-current MAU. Opp'n

2

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

at 10. But the Company's statements referenced accurate historical data, which is not actionable under the securities laws. Mot. at 11–12.

To try to transform these statements about past performance into ones about future performance, Plaintiff relies on inapposite cases that are nothing like the facts here. For example, in *Schueneman v. Arena Pharms., Inc.*, the defendant company said it was "confident" about the FDA approving its weight loss drug because animal studies had demonstrated it was safe, while allegedly withholding a study showing the drug caused cancer in rats. 840 F.3d 698, 700–02, 704, 706 (9th Cir. 2016). Nothing of the sort is alleged here, where Defendants disclosed two years of admittedly accurate financial data, and the Q2 results that were ultimately disclosed did not (and could not) contradict historical metrics.

Nor is this case like *Shenwick v. Twitter, Inc.*, where the defendant allegedly withheld flatlining or declining daily active user ("DAU") data—its "main user engagement metric," according to witnesses—while "touting" MAU data to suggest user activity was accelerating. 282 F. Supp. 3d 1115, 1135–40 (N.D. Cal. 2017). Unlike *Twitter*, Plaintiff does not allege that WEBTOON possessed declining DAU data, that WEBTOON relied on such data as a key metric, or that such data contradicted WEBTOON's MAU data. Moreover, unlike *Twitter*, WEBTOON explicitly and adequately warned investors that it had already experienced, and expected to continue to experience, fluctuations and declines in user activity.

Plaintiff further quibbles about whether the deviation from past performance has to be "extreme," "extraordinary," or "material" to trigger a duty to disclose intra-quarter data. Opp'n at 11–13. These are semantics. The point is that Q2 2024 MAU results ***did not deviate at all*** from past performance, much less in any significant way. Total MAU declined by just 1.6% in Q2 2024, which was well within the range of historical fluctuations disclosed to investors. Mot. at 4; Ex. 5 at 1–2. Indeed, MAU declined 3.3% in Q4 2023, less than a year before the IPO. Mot. at 4; Ex. 3 at 90. The same is true of revenue, which declined by just 1.8% in Q2 2024 after declining by

3

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

2.2% in Q1 2024. Mot. at 5; Ex. 3 at 114; Ex. 5 at 1. And, as discussed in Defendants' brief, both total MAU and revenue *rebounded* in Q3 2024. Mot. at 4–5; Ex. 7 at 3, 25.[2] Such routine, minor, and transitory fluctuations in financial metrics, under any standard, cannot possibly put WEBTOON on notice of an adverse trend (*see infra* §II.C) or otherwise trigger an intra-quarter duty to disclose. *See Torrid II*, 2024 WL 3740052, at *9 (dismissing Section 11 claim where "slight uptick" after IPO was "nothing out of the ordinary").

Plaintiff does not cite any case finding that such measly post-IPO fluctuations give rise to securities liability. And despite the Opposition's claims (Opp'n at 12), this case clearly does not present the situation contemplated by *Golubowski v. Robinhood Markets, Inc.* ("*Robinhood II*") involving a "persistent decline in multiple financial metrics." 2024 WL 269507, at *9 (N.D. Cal. Jan. 24, 2024) (citing cases). There were no persistent declines in *any* financial metrics here, much less multiple. The fluctuations here were routine and comfortably within historical norms. *Id.* at *10 ("[T]he MAU and AUC metrics more accurately reflect historical fluctuations.").[3]

Finally, the Opposition argues that WEBTOON should have known at the time of the IPO that MAU was unstable because (1) the release of an AI-recommendation model was delayed at the beginning of Q2 2024, and (2) WEBTOON tracked active users on a daily, weekly, and monthly basis. Opp'n at 9–10 (citing ¶¶ 11, 47–48, 103).[4] But the AI-recommendation model was released by the middle of Q2 2024,

---

[2]     By relying on Q3 2024 results (Opp'n at 5–6, 23), Plaintiff waives the argument that the Court cannot consider these results at the motion to dismiss stage.

[3]     The Opposition further cites *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013). But the Opposition ignores that the *Facebook* court, in a follow-on decision, explained that its decision was "highly unique" and based on an "extremely specific set of facts" that are not present here. *In re Facebook, Inc. IPO Sec. and Deriv. Litig.*, 986 F. Supp. 2d 524, 531–32, 538 (S.D.N.Y. 2014).

[4]     The Opposition further ignores key qualifying language in the RS that MAU "demonstrated durable and consistent growth across regions" but "typically see[s] *higher activity in the third quarter of the calendar year due to seasonal impact*," and

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*before the IPO*. Ex. 3 at 24. WEBTOON's post-IPO statement that the delayed release "resulted in softer overall user dynamics" says nothing about MAU or what WEBTOON knew at the time of the IPO. Ex. 6 at 6. More fundamentally, WEBTOON could not have known the MAU results for Q2 2024 (which averages MAU across April, May, and June) until the month of June ended—i.e., *after the IPO*. Even still, the actual Q2 2024 MAU results in no way suggested that MAU was unstable, inconsistent, or lacking durability. Thus, the Opposition's "knowledge" allegations are purely speculative and irrelevant.

**Revenue and ARPPU Statements (¶¶61–65)**: The Opposition concedes that the RS provided accurate historical revenue and ARPPU data showing fluctuations and declines before the IPO, the RS warned investors that WEBTOON had "experienced rapid growth … in recent periods" and investors "should not rely on [WEBTOON's] historical growth rates as an indication of future performance," and Q2 2024 revenue results were well within range of past performance. Ex. 3 at 28. These concessions establish that none of the challenged revenue statements—which are not actionable as a matter of law, *see infra* §II.B—were materially misleading. And despite the Opposition's claims, Q2 2024 results actually showed that advertising revenue *increased*. *Compare* Ex. 4 at 8, *with* Opp'n at 13.

*Mulderrig v. Amyris*, 492 F. Supp. 3d 999 (N.D. Cal. 2020), is inapposite. There, the defendant made financial forecasts that "were intertwined with its misstatements of current revenues and the revenue pipeline" and failed to offer adequate cautionary language. *Id.* at 1018–22. Here, the Opposition concedes that the statements and data about WEBTOON's historical performance in the RS were accurate, and WEBTOON explicitly and adequately warned investors not to rely on historical growth rates as an indicator of future performance. Ex. 3 at 28, 39, 41.

---

Korean MAU "displaye[ed] a generally stable trend *with modest fluctuations*." Ex. 1 at 1; Ex. 3 at 89 (emphasis added).

5

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**Risk Disclosures (¶¶67, 70–74)**: The Opposition concedes that fluctuations in MAU, revenue, and foreign currency exchange rates are all risks inherent to WEBTOON's business, such that a reasonable investor would not have read a forward-looking risk disclosure to disclaim these ever-present risks. *See Waswick v. Torrid Holdings, Inc.* ("*Torrid I*"), 2023 WL 9197563, at *7 (C.D. Cal. Dec. 1, 2023). It also concedes that WEBTOON warned investors that it had experienced MAU fluctuations and declines that were expected to continue in the future, it had experienced recent growth that was not an indicator of future performance, and its current and future operations are subject to fluctuations in currency exchange rates. Ex. 3 at 29, 77, 118. These concessions mean none of the challenged risk disclosures are materially misleading. *See Torrid II*, 2024 WL 3740052, at *9 (rejecting Section 11 claim where risk factors were not "only contingently phrased").

The Opposition further concedes that the foreign currency exchange rate risk disclosure—which concerned "the impact of foreign currency . . . [as to] ***historical operating results***" (¶¶67 (emphasis added))—was objectively true. Ex. 3 at 118. But even though foreign currency exchange rates are obviously public information, Plaintiff argues they cannot be considered on a motion to dismiss because it is a "truth on the market defense." Opp'n at 14–17. Not so. The question here is not whether a specific piece of information was disclosed to the market before an alleged misstatement. Rather, the question is whether Defendants had a duty to disclose obviously public information. A wall of Ninth Circuit authority holds that Defendants had no such duty. *See, e.g.*, *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1163 (9th Cir. 2009); *Robinhood II*, 2024 WL 269507, at *15; *Ikeda v. Baidu, Inc.*, 2021 WL 1299046, at *13 (N.D. Cal. Apr. 7, 2021); *Zee v. Green Dot Corp.*, 2013 WL 12133841, at *9 n.11 (C.D. Cal. May 2, 2013).

The Opposition also incorrectly claims that WEBTOON failed to provide information to investors "to ascertain what currency fluctuations meant for the Company's global operations." Opp'n at 16. In fact, the RS provided revenue on a

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

"constant currency basis" for investors to consider, which "exclude[s] the effects of foreign currency volatility." Ex. 3 at 115. And regardless, Plaintiff ignores *In re NBTY, Inc. Sec. Litig.*, which holds that the "effect of fluctuations in currency" regarding a company with foreign operations "is a situation that would be within the common knowledge of the average investor," and so cannot give rise to securities liability. 224 F. Supp. 2d 482, 495 (E.D.N.Y. 2002).

**B.     The Challenged MAU, Revenue, and ARPPU Statements Are Not Actionable As a Matter of Law.**

The Opposition fails to rebut Defendants' arguments that many of the challenged statements are not actionable as a matter of law. Opp'n at 17–21.

**Corporate Puffery (¶¶57–59, 61–62, 64–65)**: A statement is nonactionable puffery if it is not "capable of objective verification." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014); *see also Weston Fam. P'ship LLLP*, 29 F.4th at 619. The "obviously unimportant" standard applied by Plaintiff is *not the law* in the Ninth Circuit. Opp'n at 17–20. Puffery about important subjects is still puffery. No Ninth Circuit decision even mentions Plaintiff's standard. And for the reasons discussed above (*see supra* §II.A), none of the challenged statements gave "the impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Terenzini v. GoodRx Holdings, Inc.*, 2022 WL 122944, at *5 (C.D. Cal. Jan. 6, 2022).

Specific to MAU (¶¶57–59), the Opposition ignores all of Defendants' cases, which establish these statements are classic puffery. *See* Mot. at 10–11 (citing cases). It further ignores that WEBTOON provided to investors the *underlying data* about which it was commenting, so investors could analyze the data for themselves. *Id.* at 11–12 (citing cases). Unlike Plaintiff's authority, none of these statements claimed that MAU was "unchanged" or "growing" when in fact it was "performing poorly."

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Opp'n at 18 (discussing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143–44 (9th Cir. 2017)).[5]

Specific to revenue and ARPPU (¶¶61–62, 64–65), the Opposition again ignores the bulk of Defendants' cases. *See* Mot. at 15–16 (citing cases).[6] It offers no analysis of the specific statements either. Instead, Plaintiff cherry picks the terms "accelerating" and "strengthening" from two statements and mischaracterizes them as commenting on the present state of WEBTOON's advertising and IP adaptations, when in fact they were discussing WEBTOON's ***aspirations for the future***. *Compare* Opp'n at 19–20, *with* Ex. 3 at 14, 33. Unlike Plaintiff's authority, these statements fall well short of promising that WEBTOON was "on track" to "deliver accelerating top-line revenue growth and expanding profitability." Opp'n at 19–20 (discussing *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1054 (N.D. Cal. 2018)).

**Belief Statements (¶¶64–65)**: The Opposition discusses the four "we believe" statements in a footnote (Opp'n at 19 n.10), and concedes that the Complaint has not alleged the required subjective falsity. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616–17 (9th Cir. 2017). Indeed, the Complaint alleges nothing to suggest WEBTOON did not hold these beliefs about advertising revenue, IP adaptation revenue, or growing WEBTOON's media library at the time of the IPO. These nonactionable statements should be dismissed.

---

[5] Plaintiff's citation to this Court's recent decision in *Loc. 272 Lab.-Mgmt Pens. Fund v. Walt Disney Co.*, 2025 WL 569230 (C.D. Cal. Feb. 19, 2025) is unpersuasive. None of the MAU statements described current user growth as "strong," "solid," or "significant."

[6] The opposition tries to distinguish two of Defendants' cases (*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech, Inc.*, 39 F.4th 1092 (9th Cir. 2022) and *In re On24, Inc. Sec. Litig.*, 2023 WL 7449838 (N.D. Cal. July 7, 2023)) by claiming WEBTOON made optimistic statements when it knew revenue was "doing poorly." Opp'n at 20 n.11. But the Complaint has not sufficiently alleged these optimistic statements were made "against a clearly pessimistic backdrop." *Align Tech, Inc.*, 39 F.4th at 1099.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**Forward-Looking Statements (¶¶59, 62, 64–65)**: The Opposition concedes that the revenue and ARPPU statements (¶¶62, 64–65) are forward-looking. Opp'n at 20–21. Still, the Opposition falsely claims that Defendants' have failed to identify "the specific risk disclosures that would insulate them from liability." *Id.* at 21. The Motion clearly sets out several applicable risk disclosures (Mot. at 6–7), and Defendants further memorialized them in an appendix (Ex. 1 at 10–15). These risk disclosures specifically concerned growth, revenue, MAU, ARPPU, advertising, IP adaptations, and foreign currency exchange rates—all the subjects challenged by Plaintiff. The Opposition simply ignores them.

The Opposition's claim that "significant opportunities to drive user growth" (¶59) is a "mixed statement" because it followed a statement about Rest of World MAU rebounding misses the mark for several reasons. Opp'n at 20 n.12. First, "mixed statements" arise in cases about the PSLRA's safe harbor provision, so it is irrelevant to the Court's analysis under the "bespeaks caution doctrine." Second, Plaintiff concedes that ROW MAU **did rebound** in Q3 2023. Third, the "significant opportunities" statement was immediately preceded by a statement about North America MAU, which the Complaint and Opposition omit (and do not allege was false or misleading). Ex. 3 at 89. Fourth, the statement was accompanied by robust risk disclosures cautioning that such growth may not occur. Ex. 3 at 29, 31. The bespeaks caution doctrine should apply.

**C.    The Complaint Does Not State a Regulation S-K Claim.**

The Opposition's Regulation S-K arguments similarly fail. Opp'n at 21–24.

**Item 105 – Adequate Risk Disclosures**: The Opposition, like the Complaint, fails to identify a single risk that WEBTOON failed to properly disclose to investors. Opp'n at 24. It further ignores that the RS warned of materialized risks concerning growth, revenue, MAU, ARPPU, and foreign currency exchange rate fluctuations (Ex. 3 at 28, 29, 31, 33, 34, 36, 47), and that these are all inherent business risks well known to reasonable investors. Plaintiff's Item 105 claim fails.

9

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**Item 303 – No Known Adverse Trends**: The Opposition concedes that "the inquiry to discern if a 'trend' exists warranting disclosure under Item 303 is akin to the inquiry under Section 11 generally in determining whether out-of-quarter disclosures were extraordinary enough to require disclosure." *Robinhood II*, 2024 WL 269507, at *13. The Item 303 claim fails for the same reasons (*see supra* §II.A).[7]

Further, the Opposition offers mere speculation about WEBTOON's knowledge of an adverse trend. Opp'n at 22–24; *see also Ryan v. FIGS, Inc.*, 2024 WL 187001, at *17 (C.D. Cal. Jan. 17, 2024); *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *11–12 (C.D. Cal. Apr. 17, 2009)). As discussed above (*see supra* §II.A), an after the-fact statement about the delayed release of an AI recommendation model says nothing about what WEBTOON knew at the time of the IPO. WEBTOON also could not have possibly known the MAU results for June 2024 or Q2 2024 until *after the IPO*—by definition, WEBTOON needs complete numbers for June to calculate the monthly average. And the Complaint alleges no facts showing that WEBTOON knew its performance and financial metrics would decline after the IPO. To the contrary, performance *rebounded* in Q3 2024.[8]

---

[7]    Plaintiff's cases, which concerned "sharp," "sudden," and "persistent" declines in core financial metrics are, therefore, inapposite. *See Sundaram,* 2023 WL 6390622, at *8 (quoting and discussing *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1067 (M.D. Tenn. 2022)). And unlike *Sundaram*, in which the plaintiff alleged that shareholders were misled because YoY revenue growth was "accelerating" before the IPO (2023 WL 6390622, at *4), here Plaintiff alleges YoY revenue growth (as calculated by Plaintiff) was *decelerating* the quarter before the IPO (¶99).

[8]    Unlike here, Plaintiff's cases involved specific allegations of actual knowledge. *See Lilien v. Olaplex Holdings, Inc.,* 2025 WL 444254, at *9 (C.D. Cal. Feb 7, 2025) (defendant company's public statements about the European Union ban *before the IPO*); *In re Facebook, Inc.*, 986 F. Supp. 2d at 513–14 (defendant company's emergency calls regarding the adverse trends *before the IPO*). But like here, in *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)—Plaintiff's other case (Opp'n at 22)—the plaintiff failed to "raise a factual question of whether management knew there was a trend *and* unreasonably failed to predict that there was a likelihood that the company's future earnings and profits would be materially affected."

10

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## III.    CONCLUSION

The Court should dismiss the Complaint with prejudice.

DATED: March 18, 2025

KIRKLAND & ELLIS LLP

*/s/ Austin Norris*
Austin Norris (SBN 284603)
austin.norris@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Suite 3700
Los Angeles, CA 90067
Tel: (310) 552-4200
Fax: (310) 552-5900

Edward Hillenbrand (SBN 310872)
edward.hillenbrand@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Tel.: (213) 680-8400
Fax: (213) 680-8500

Stefan H. Atkinson, P.C. (admitted *pro hac vice*)
stefan.atkinson@kirkland.com
Jordan D. Peterson, P.C. (admitted *pro hac vice*)
jordan.peterson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900

*Attorneys for WEBTOON and the Individual Defendants*

11
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**