UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| COY BROOKMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WEBTOON ENTERTAINMENT INC., et al.,<br><br>Defendants. | Case No. 2:24-cv-07553-CBM-RAO<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS CONSOLIDATED COMPLAINT WITH PREJUDICE** |

The matter before the Court is Defendants Webtoon Entertainment, Inc., Haejin Lee, Namsum Kim, Jun Masuda, Isabelle Winkles, and Nancy Dubuc's Motion to Dismiss Consolidated Complaint With Prejudice. (Dkt. No. 61.)[1]

## I. BACKGROUND

This is a securities fraud action. The operative complaint asserts two causes of action: (1) violation of Section 11 of the Securities Exchange Act (the "Act"),

[1] Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Evercore Group LLC, Deutsche Bank Securities Inc., UBS Securities LLC, HSBC Securities (USA) Inc., Raymond James & Associates, Inc., and LionTree Advisors LLC ("Underwriter Defendants") filed a joinder to the Motion. (Dkt. No. 64.)

15 U.S.C. § 77k against all Defendants;[2] and (2) violation of Section 15 of the Act against the Individual Defendants.[3] (Dkt. No. 60 (the "Complaint").)

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. To conform to Federal Rule of Civil Procedure 8, the plaintiff must make more than "an unadorned, the-defendant-harmed me" accusation. *Iqbal*, 556 U.S. at 678. Labels and conclusions are insufficient to meet the Plaintiff's obligation to provide the grounds of his or her entitlement to relief. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* If a complaint cannot be cured by additional factual allegations, dismissal without leave to amend is proper. *Id.* On a motion to dismiss for failure to state a claim, the court accepts

---

[2] The named defendants are WEBTOON Entertainment Inc., Junkoo Kim, David J. Lee, Haejin Lee, Namsun Kim, Jun Masuda, Isabelle Winkles, Nancy Dubuc, Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Evercore Group LLC, Deutsche Bank Securities Inc., UBS Securities LLC, HSBC Securities (USA) Inc. Raymond James & Associates, Inc., and Liontree Advisors LLC.

[3] The "Individual Defendants" are Haejin Lee, Namsum Kim, Jun Masuda, Isabelle Winkles, and Nancy Dubuc.

as true all well-pleaded allegations of material fact and construes them in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008). The court may only consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B. Pleadings Requirements for Section 10(b) and Rule 10b-5 Claims**

At "the pleading stage, a complainant stating claims under Section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act of 1995]." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Fed. R. Civ. P. Rule 9(b) governs all claims sounding in fraud, and requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, as applied to securities claims alleging fraud, Rule 9(b) requires the false statement/omission be pled with particularity. The Private Securities Litigation Reform Act of 1995 ("PSLRA") heightened the pleading standard applicable to putative class actions alleging securities fraud on the basis of misleading statements or omissions by adding a requirement that a plaintiff plead intent to defraud, otherwise known as scienter, with particularity. 15 U.S.C. § 78u-4(b)(1) and (2). Section 78u-4(b) of Title 15, which sets forth the "requirements for securities fraud actions," provides:

> (1) Misleading statements and omissions. In any private action arising under this title in which the plaintiff alleges that the defendant--
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint ***shall state with particularity all facts on which that belief is formed.***
>
> (2) Required state of mind. In any private action arising under this title in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, ***state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.***

(Emphasis added.) Rule 9(b) and the PSLRA therefore impose a burden on the plaintiff to plead both falsity and scienter with particularity. *See Metzler Invest. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In requiring specificity as to falsity, the PSLRA "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Id.* at 1061 (emphasis in original). Moreover, "in order to state a claim for securities fraud that complies with the dictates of the PSLRA, the complaint must raise a 'strong inference' of scienter – *i.e.*, a strong inference that the defendant acted with an intent to deceive, manipulate or defraud." *Id.*; *see also Zucco Partners*, 552 F.3d at 990. "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). Accordingly, a plaintiff must plead falsity, scienter, and loss causation with particularity to satisfy the requirements of Rule 9(b) and the PSLRA.

## III. DISCUSSION

### A. Request for Judicial Notice

Defendants filed a request for judicial notice (Dkt. No. 63) of the following:

1. An appendix re: the alleged misstatements in the Complaint and their related cautionary disclosures (Ex. 1);
2. An appendix reflecting public Japanese yen, Korean won, and U.S. dollar currency exchange rates for October 1, 2023

through September 30, 2024 (Ex. 2);

3. WEBTOON's Prospectus, filed with the SEC on June 27, 2024 (Ex. 3);

4. WEBTOON's Q2 2024 Form 10-Q, publicly filed with the SEC on August 12, 2024 (Ex. 4);

5. WEBTOON's August 8, 2024 Press Release (Ex. 5);

6. A transcript of WEBTOON's Q2 2024 earnings call on August 8, 2024 (Ex. 6); and

7. WEBTOON's Q3 2024 Form 10-Q, publicly filed with the SEC on November 12, 2024 (Ex. 7).[4]

The Court denies Defendants' request for judicial notice as to Exhibits 1 and 2, which are appendices prepared by Defendants regarding the alleged misstatements and exchange rates. *See* L.R. 11-7; *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *4 (C.D. Cal. Nov. 20, 2017); *In re Acadia Pharms. Inc. Sec. Litig.*, 2020 WL 2838686, at *3 (S.D. Cal. June 1, 2020). The Court denies Defendants' request for judicial notice of Exs. 3-6 as moot because the Court may consider Exhibits 3-6 under the incorporation by reference doctrine (*see* Compl. ¶¶ 2, 43, 49, 89, 104-05, 107-08, 112). *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006); *Lowe v. Tandem Diabetes Care Inc.*, 2024 WL 1898473, at *4 (S.D. Cal. Apr. 30, 2024); *Sylebra Cap. Partners Master Fund Ltd v. Everbridge, Inc.*, 2023 WL 3549506, at *1 (C.D. Cal. May 9, 2023); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 870-72 (N.D. Cal. 2023). The Court grants Defendants' request for judicial notice of Ex. 7 for purposes of determining what information was in the public realm at the time but not for the truth of its contents. *See Dreiling*, 458 F.3d at 946 n.2; *Lowe*, 2024 WL 1898473, at *4; *Sylebra*, 2023 WL 3549506, at *1.

/ / /

---

[4] Plaintiff filed an opposition to Defendants' request for judicial notice and Defendants filed a reply. (Dkt. Nos. 68, 70.)

**B. Section 10(b) of the Act and Rule 10b-5**

The elements of a securities fraud action pursuant to Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission of fact, (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss. *See Zucco Partners*, 552 F.3d at 990; *In re Daou Sys. Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

**(1) Monthly Active Users Statements (Compl. ¶¶ 57-59)**

Defendants contend the allegedly false and/or misleading statements in the Registration Statement regarding the durability, consistency, stability, and growth potential of Webtoon's Monthly Active Users ("MAU") (*see* Compl. ¶¶ 57-59) fail because they (1) are corporate puffery; (2) are not false or misleading; (3) are forward looking; and (4) had no duty to disclose.

**(a) Corporate Puffery**

"[M]ildly optimistic, subjective assessment[s]" do not "amount[] to a securities violation" because "[w]hen valuing corporations,[ ] investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers," because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *In re Cutera Sec. Lit.*, 610 F.3d 1103, 1111 (9th Cir. 2010). Thus, "[p]uffing language" which includes vague statements of optimism like . . . 'well positioned'" is not actionable under the Act. *In re Arrowhead Pharm., Inc. Sec. Litig.*, 2017 WL 5635422, at *4 (C.D. Cal. Sept. 20, 2017) (citations omitted).[5] "A statement is 'puffing' or 'puffery' if it expresses an opinion that is 'not capable of objective verification'

---

[5] *See also In re Syntex Corp. Sec. Litig.,* 855 F.Supp. 1086, 1095 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996); *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *13 (N.D. Cal. Mar. 29, 2013); *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1200 (N.D. Cal. 2008); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001).

and if it is lacking in the specificity that 'a reasonable investor could expect the [speaker] to be pegged.'" *Id.* (citations omitted). "Examples of 'mere corporate puffery' include statements such as 'the opportunity for system placement at hospitals is still very, very large,' and that a company 'will come out stronger' and 'is in a pretty good position' despite the economic crisis.'" *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) (citations omitted). However, "even general statements of optimism, when taken in context, may form a basis for a securities fraud claim when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Id.* (internal quotations and citations omitted).

Here, Defendants contend the allegedly misleading statements in the Registration Statement pled in paragraphs 57, 58, and 59 of the Complaint are non-actionable corporate puffery. The Court finds the statements in paragraphs 57-59 of the operative Complaint regarding Webtoon's monthly active user levels are not corporate puffery because the monthly active user levels were capable of objective verification, and the statements address a specific aspect of the Webtoon's operation (i.e., monthly active user levels) that the Complaint alleges Defendants knew to be declining. *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014); *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 770 (9th Cir. 2023); *Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1143-44.

**(b) Not False or Misleading**

"Although plaintiffs do not need to prove at the pleading stage that [a] statement is false or misleading, pursuant to Rule 9(b) and the PSLRA, they must plead with enough particularity to make the falsity or the misleading character of the statement plausible." *In re NVIDIA Corp. Sec. Litig.*, 2011 WL 4831192, at *4 (N.D. Cal. Oct. 12, 2011), *aff'd*, 768 F.3d 1046 (9th Cir. 2014); *see also Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1112 (C.D. Cal. 2012).

Defendants contend the alleged statements regarding monthly active users in paragraphs 57-59 of the Complaint were not false or misleading because the historical data reported in the Registration Statement was accurate. Construing the Complaint in the light most favorable to Plaintiff, the alleged statements in paragraphs 57-59 of the Complaint plausibly created an impression that Webtoon's monthly active user levels was stable and experiencing positive growth rather than simply reporting about the past, which was allegedly contrary to what Defendants knew at the time regarding the decline in monthly active user levels (*see* Compl. ¶¶ 49, 60). *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1144; *Glazer Cap. Mgmt.*, 63 F.4th at 771; *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017). Therefore, Plaintiff pleads sufficient facts that the statements in paragraphs 57-59 of the Complaint regarding the monthly active user levels were false or materially misleading.

**(c) Forward-Looking Statements**

Under the Safe Harbor provision of the Act, "if a forward-looking statement[6] is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant, and the statement is not actionable regardless of the plaintiff's showing of scienter." *In re Cutera Sec. Litig.*, 610 F.3d at 1112; 15 U.S.C. § 78u–5(c)(1). If, however, a forward-looking statement is not identified as such or is unaccompanied by meaningful cautionary statements, then the statement is actionable only if the plaintiff proves that the forward-looking statement "was made with actual

---

[6] A forward-looking statement is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues." *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (citing 15 U.S.C. § 78u5(i)).

knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u–5(c)(1)(B). To the extent any of the statements at issue in this action contain both forward-looking and non-forward-looking statements, the Court examines them "as a whole" to determine whether they relate "to future expectations and performance." *Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.,* 759 F.3d 1051, 1059 (9th Cir. 2014). Under the "bespeaks caution" doctrine, "a court can rule as a matter of law (typically in a motion to dismiss for failure to state a cause of action or a motion for summary judgment) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994). While "blanket warnings that securities involve a high degree of risk [are] insufficient to ward against a federal securities fraud claim," "precise cautionary language which directly addresses itself to future projections, estimates or forecasts in a prospectus" do not constitute a misrepresentation. *Id.* at 1414.

Defendants contend Webtoon's statement that a 2023 rebound in the rest of the world monthly active user levels "sets the stage for significant opportunities to drive user growth" in paragraph 59 of the Complaint was a forward-looking statement and not actionable because Webtoon did not guarantee future growth, but merely stated that there were "opportunities" for growth, and that Webtoon explicitly cautioned investors that such growth may never occur (citing Norris Decl. Ex. 3 at 29, 31). Defendants do not explain how pages 29 and/or 31 of Ex. 3 to Norris' declaration cautioned investors the stated growth in paragraph 59 of the Complaint may never occur and shields Defendants from liability under securities laws. Defendants thus fail to identify the "precise cautionary language which directly addresses itself to future projections, estimates or forecasts" shielding them from liability based on the bespeaks caution doctrine. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1413. Accordingly, the Court declines to dismiss

the Complaint based on the bespeaks caution doctrine at the pleading stage. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996); *In re Honest Co. Sec. Litig.*, 615 F. Supp. 3d 1149, 1155-56 (C.D. Cal. 2022); *see also Gray v. First Winthrop Corp.*, 82 F.3d 877, 884 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (June 21, 1996); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1148; *Glazer Cap. Mgmt.*, 63 F.4th at 774.

**(d) Duty to Disclose**

The Complaint alleges Webtoon "failed to disclose that the scale of the Company's user base was contracting and in a state of decline at the time of the IPO," when "[i]n reality, WEBTOON's Global [monthly active users] was not at all "durable and consistent," and was deteriorating, resulting in the loss of millions of Global [monthly active users] in the lead up to the IPO as the Company suffered from soft user dynamics in Korea and Rest of World despite proclamations of continued growth and 'stabilization' in the key metric in those regions. Rest of World [monthly active users] had not 'rebounded,' nor 'stabilized,' and Korea [monthly active users] was not 'stable,' nor 'durable,' but instead at the time of the IPO both regions had dropped to their lowest quarterly [monthly active users] levels in a year or more, with Korea [monthly active users] growth declining 6.6% [year-over-year] due to soft user dynamics before the IPO," and the "Registration Statement's disclosures concerning [monthly active users] were . . . misleading and violated SEC disclosure rules as they were not indicative of WEBTOON's future performance because at the time of the IPO, the Company was already experiencing a downward trend in the key metric." (Compl. ¶ 60.)

Defendants contend they could not have known the monthly active users results for the second quarter of 2024 until the second quarter of 2024 had ended. The Complaint, however, alleges Webtoon stated in the Registration Statement that it regularly "track[s] and review[s]" monthly active users and Webtoon's admission that it "look[s] at average users on a daily, weekly and monthly basis to

understand broader trends in consumption." (Compl. ¶¶ 47, 49.) Moreover, the Complaint alleges "Defendants were aware of this declining metric" re the Company's monthly active users "[a]nd at the time of the IPO, WEBTOON was in the midst of a delay in the anticipated pre-IPO launch of an AI recommendation tool in early 2Q 2024," and "[t]hat pre-IPO launch, which did not happen in early 2Q 2024 as intended, contributed to 'softer user dynamics' for the quarter." (*Id.* ¶ 89.)

Defendants also contend Plaintiff's claim regarding Webtoon's failure to disclose interim data is contrary to well-settled securities laws which do not require instantaneous updates and do not require a company to disclose results for a fiscal quarter in progress, and argue routine, minor, and transitory fluctuations in financial metrics "cannot possibly put WEBTOON on notice of an advert rent" or "otherwise trigger an intra-quarter duty to disclose." While some courts have found that a company did not have a duty to disclose declines prior to the end of a quarter,[7] the Ninth Circuit has emphasized "[w]e have never held – nor even hinted – that . . . intra-quarter data cannot, as a matter of law, be material." *U.S. v. Smith*, 155 F.3d 1051, 1065 (9th Cir. 1998); *see also Weston Fam. P'ship LLLP*., 29 F.4th at 620. Here, the Court must accept as true Plaintiff's allegation that at the time of the IPO, Defendants were aware of the intra-quarter data regarding the decline in monthly active users (*see, e.g.,* Compl. ¶¶ 47, 49, 89). Therefore, the Complaint plausibly alleges Defendants' statements that monthly active user levels "stabilized," "scaled," and "demonstrated durable and consistent growth" (*see id.* ¶¶ 57-59) were materially misleading. *See Smith*, 155 F.3d at 1065; *Weston Fam.*

---

[7] *See, e.g., Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419 (9th Cir. 1994); *In re Progenity, Inc. Sec. Litig.*, 2023 WL 219345, at *6 (S.D. Cal. Jan. 13, 2023); *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 773 (N.D. Cal. 2020); *Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017).

*P'ship LLLP.*, 29 F.4th at 620.

Defendants argue the deviations in the monthly user levels were not at a level which required an intra-quarter disclosure, relying on *Golubowski v. Robinhood Mkts., Inc.*, 2024 WL 269507, at *8 (N.D. Cal. Jan. 24, 2024), wherein the district court applied the "extreme departure" from historical results test and held the "inclusion of ... out-of-quarter or intra-quarterly reports" was "only rendered necessary to the extent that they reflect[ed] declines so extraordinary as to be unusual and indicative of larger future trends when viewed in context of the company's historical data." However, on appeal of that case, the Ninth Circuit found the district court applied the wrong legal standards, holding "the 'extreme departure' test is not the law of this circuit" and "the proper test for the duty to disclose is the test for materiality." *Sodha v. Golubowski*, 2025 WL 2487954, at *9, *11 (9th Cir. Aug. 29, 2025). Here, this Court applies the materiality test for the duty to disclose, and accepts as true Complaint's allegations that Defendants knew at the time statements were made that there was a decline in the monthly active user levels but made statements that those levels were stable and rebounding. Because Defendants chose to make statements regarding positive information to the market, Plaintiff plausibly alleges information contrary to such statements was material and that Defendants had a duty to disclose adverse information that contradicted the positive information disclosed to investors. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *7 (N.D. Cal. Aug. 7, 2020). Therefore, Plaintiff pleads sufficient facts that Defendants had a duty to disclose intra-quarter information regarding the decline in monthly active users which contradicted the positive information regarding monthly active user levels in Defendants' statements.

/ / /

/ / /

**(2) Revenue Prospects and Average Revenue Per Paying User (Compl. ¶¶ 61-65)**

Defendants contend statements regarding revenue prospects and growth opportunities alleged in paragraphs 61-62 and 64-65 of the Complaint are non-actionable corporate puffery. The alleged statements in paragraphs 61, 62, and 64-65 of the Complaint lack specificity, are vague statements of optimism, and are therefore non-actionable puffery. (*See, e.g.,* Compl. ¶ 65 ("we believe"); *id.* ¶¶ 62, 65 ("opportunity").) *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1143; *In re Cutera Sec. Lit.*, 610 F.3d at 1111; *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. at 1095, *aff'd*, 95 F.3d 922 (9th Cir. 1996); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 956 (D. Ariz. 2007); *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *15 (N.D. Cal. Feb. 12, 2015); *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *13 (N.D. Cal. Nov. 16, 2020).[8]

**(3) Risk Disclosures (Compl. ¶¶ 67, 70, 71, and 74)**

Defendants argue the allegations in paragraphs 67, 70, 71 and 74 of the Complaint that Webtoon's risk disclosures about growth, revenue, and currency exchange rate fluctuations were misleading fail. As discussed above, the Complaint pleads sufficient facts that Defendants' affirmative statements regarding monthly active user levels were false or materially misleading and that Defendants were aware at the time the alleged statements were made that monthly active users were declining. Therefore, Plaintiff pleads sufficient facts, taken as true, demonstrating Defendants' risk disclosures (*see* Compl. ¶ 70; Registration

[8] Because the Court finds the statements regarding revenue prospects and growth opportunities alleged in paragraphs 61, 62, 64, and 65 of the Complaint are non-actionable puffery, the Court does not reach the parties' arguments regarding whether these statements are false or misleading, are statements of belief, are forward-looking, or whether Defendants had a duty to disclose regarding those statements.

Statement at p.28; Compl. ¶ 71; Registration Statement at p.29), did not notify investors that the risk of declining monthly active uses had already occurred. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) (citing *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985-87 (9th Cir. 2008)); *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934 (9th Cir. 2023); *see also In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1148; *Hoang v. ContextLogic, Inc.*, 2023 WL 8879263, at *12 (N.D. Cal. Dec. 22, 2023). As to foreign exchange rates, taking the allegations in the Complaint as true, Plaintiff plausibly alleges Defendants' disclosures that foreign currency fluctuations "could" result in adverse effects (*see* Compl. ¶ 74) did not notify investors that the risks may have already materialized (*see id.* ¶¶ 73, 75, 98). *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 703; *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948-49 (9th Cir. 2023); *Hoang*, 2023 WL 8879263, at *12. Therefore, the Complaint sufficiently alleges the risk disclosures regarding monthly active users and foreign currency fluctuations were false or misleading.

**C. SEC Regulation S-K Claim**

(1) **Item 105 of Regulation S-K**

The Complaint alleges Webtoon's Registration Statement failed to adequately disclose adverse trends and risks in violation of the SEC's disclosure regulations set forth in Regulation S-K. (*See* Compl. ¶¶ 76-103.) Defendants argue Plaintiff's Regulation S-K Item 105 claim fails because Webtoon's risk disclosures were adequate and the Complaint does not identify a single risk factor that Webtoon failed to disclose.

Item 105 of Regulation S-K provides:

> (a) Where appropriate, provide under the caption "Risk Factors" a discussion of the ***<u>material factors that make an investment in the registrant or offering speculative or risky</u>***. This discussion must be organized logically with relevant headings and each risk factor should be set forth under a subcaption that adequately describes the risk. The presentation of risks that could apply generically to any registrant or any offering is discouraged, but to the extent generic risk factors are presented, disclose them at the end of the risk factor section under the caption "General Risk Factors."

> (b) Concisely explain how each risk affects the registrant or the securities being offered. If the discussion is longer than 15 pages, include in the forepart of the prospectus or annual report, as applicable, a series of concise, bulleted or numbered statements that is no more than two pages summarizing the principal factors that make an investment in the registrant or offering speculative or risky. If the risk factor discussion is included in a registration statement, it must immediately follow the summary section required by § 229.503 (Item 503 of Regulation S–K). If you do not include a summary section, the risk factor section must immediately follow the cover page of the prospectus or the pricing information section that immediately follows the cover page. Pricing information means price and price-related information that you may omit from the prospectus in an effective registration statement based on Rule 430A (§ 230.430A of this chapter). The registrant must furnish this information in plain English.

17 C.F.R. § 229.105 (emphasis added). "[C]ourts have held that a company's risk disclosures are misleading in violation of Item 105 where the 'risk factors' reported in the Registration had already materialized by the time of its IPO." *Lilien v. Olaplex Holdings, Inc.*, 765 F. Supp. 3d 993, 1019 (C.D. Cal. 2025) (collecting cases). As discussed above, the Complaint alleges the risk disclosures regarding the monthly active users and foreign currency fluctuations had already materialized at the time of the IPO, and therefore Plaintiff sufficiently alleges a violation of Item 105. *See id*. at 1019; *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *6-7; *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 988-89 (D. Ariz. 2024), *reconsideration denied*, 2025 WL 371717 (D. Ariz. Feb. 3, 2025).

(2) **Item 303 of Regulation S-K**

Item 303 of Regulation S-K provides:

> (a) Objective. The objective of the discussion and analysis is to provide material information relevant to an assessment of the financial condition and results of operations of the registrant including an evaluation of the amounts and certainty of cash flows from operations and from outside sources. The discussion and analysis must focus specifically on material events and uncertainties known to management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. This includes descriptions and amounts of matters that have had a material impact on reported operations, as well as matters that are reasonably likely based on management's assessment to have a material impact on future operations. The discussion and analysis must be of the financial

> statements and other statistical data that the registrant believes will enhance a reader's understanding of the registrant's financial condition, cash flows and other changes in financial condition and results of operations. A discussion and analysis that meets the requirements of this paragraph (a) is expected to better allow investors to view the registrant from management's perspective.
>
> (b) Full fiscal years. The discussion of financial condition, changes in financial condition and results of operations must provide information as specified in paragraphs (b)(1) through (3) of this section and such other information that the registrant believes to be necessary to an understanding of its financial condition, changes in financial condition and results of operations. Where the financial statements reflect material changes from period-to-period in one or more line items, including where material changes within a line item offset one another, describe the underlying reasons for these material changes in quantitative and qualitative terms. Where in the registrant's judgment a discussion of segment information and/or of other subdivisions (e.g., geographic areas, product lines) of the registrant's business would be necessary to an understanding of such business, the discussion must focus on each relevant reportable segment and/or other subdivision of the business and on the registrant as a whole. . . .
>
> (2) Results of operations.
>
> . . .
>
> (ii) Describe ***any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations***. If the registrant knows of events that are reasonably likely to cause a material change in the relationship between costs and revenues (such as known or reasonably likely future increases in costs of labor or materials or price increases or inventory adjustments), the change in the relationship must be disclosed.

17 C.F.R. § 229.303 (emphasis added).

Defendants argue Plaintiff's Item 303 claim fails because Webtoon had no duty to disclose foreign currency exchange rates to investors since those exchange rates were publicly available. Defendants contend the Registration Statement made clear that Webtoon's revenue was subject to foreign currency exchange rate fluctuations (Ex. 3 at 118), and the average investor knows that currency fluctuations affect any company conducting business internationally. However, as discussed above, "the information [D]efendants *did* disclose create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]" and "[u]nder the facts as alleged by [plaintiff], [D]efendants had

an affirmative duty to correct that impression." *Bos. Ret. Sys.*, 2020 WL 4569846, at *7; *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 703; *In re Facebook, Inc. Sec. Litig.*, 87 F.4th at 948-49; *Hoang*, 2023 WL 8879263, at *12.

Defendants also argue Plaintiff's Regulation S-K Item 303 claim fails because Plaintiff does not allege any persistent trend of adverse conditions to disclose that existed prior to the IPO nor allege any "extraordinary" persistent trends. Here, the Complaint alleges a depreciation based on foreign currency fluctuations that occurred through at least January through June of 2024—i.e., at least 6 months in 2024 and alleges the foreign currency fluctuations were an "Undisclosed Trend." (*See* Compl. ¶¶ 95-97.)[9] "[T]he case law is far from settled regarding the length of time necessary to constitute a trend' for the purpose of Item 303." *Sundaram v. Freshworks Inc.*, 2023 WL 6390622, at *7 (N.D. Cal. Sept. 28, 2023).[10] The Court need not determine at this initial stage whether the alleged six-month decline in foreign currency exchange rates constitutes a "trend" under Item

---

[9] Defendants argue the foreign currency fluctuations "rebounded just one quarter later in Q3 2024." However, the relevant period for determining whether Defendants failed to disclose trends or uncertainties under Item 103 is the time of the registration. *See* 17 C.F.R. § 229.303. Here, the Registration Statement was filed with the SEC on June 27, 2024, the same date as the IPO. (Compl. ¶ 2; Defendants' RJN Ex. 3.)

[10] The cases relied on by Defendants primarily address a 2-3 month or less decline for purposes of determining a trend under Item 303, whereas here the decline alleged in the Complaint was at least 6 months prior to the IPO (*see* Compl. ¶¶ 95-97). In *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998), the Ninth Circuit noted "[a] slowdown after a period of growth might be a trend" under Item 303, and found defendant "knew of or could have reasonably expected the slowdown in the middle of the IPO quarter" where the company's IPO occurred three weeks before the end of the fourth quarter and fourth quarter results were released six weeks later showing a "slowdown" between the third quarter and fourth quarter. *See also Felipe v. Playstudios Inc.*, 2024 WL 1380802, at *13 (D. Nev. Mar. 31, 2024) (finding plaintiff "plausibly alleges that problems with Kingdom Boss had remained consistent for at least six months and had thus become a trend" under Item 303).

303 as a matter of law. Rather, the Court examines whether Plaintiff plausibly alleges Defendants knew the foreign currency fluctuations prior to the IPO would have a negative impact on revenues. Here, the Complaint alleges "the negative trend in and declining strength of the Korean Won and Japanese Yen throughout the first half of 2024 was already having an existing material adverse effect on the Company's operating results, which were later reported in the Company's 2Q 2024 financial results" and "defendants were aware of the exposure WEBTOON faced amid the then-existing deterioration in foreign currency" and "[f]ail[ed] to disclose that known trend." (Compl. ¶ 98.) Therefore, the Complaint plausibly alleges Defendants were aware of foreign currency fluctuations for at least sixth months prior to the IPO to state a claim under Item 303. *See Sundaram*, 2023 WL 6390622, at *7; *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 776 n.7 (N.D. Cal. 2020). Plaintiff thus pleads sufficient facts to state a claim under Item 303.

**D. Section 15 of the Act**

Section 15(a) of the Act provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, ***controls*** any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o(a) (emphasis added). To state a clam for violation of Section 15, Plaintiff must plead sufficient facts regarding an underlying violation of Section 11 or 12 of the Act and allege the defendant had actual power or control over the primary violator. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012); *In re Ubiquiti Networks, Inc. Sec. Litig.*, 669 F. App'x 878, 880 (9th Cir.

2016).[11] As discussed above, Plaintiff pleads sufficient facts to state a claim for an underlying violation of the Act. Moreover, the Complaint alleges each of the individual defendants signed the Registration Statement on behalf of the Company (*see* Compl. ¶¶ 22-27). Plaintiff therefore pleads sufficient facts that the individual defendants are control persons to state a claim under Section 15 of the Act. *See Lilien*, 765 F. Supp. at 1020 (citing *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 333 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013)).

## IV. CONCLUSION

Accordingly, the Court rules on Defendants' Motion to Dismiss and Underwriter Defendants' Joinder to the Motion as follows:

(1) The Court **GRANTS** the Motion to Dismiss and Joinder as to Plaintiff's Section 10(b) and Rule 10b-5 claim with respect to statements regarding revenue prospects (Compl. ¶¶ 61-65), and **DENIES** the Motion to Dismiss and Joinder as to Plaintiff's Section 10(b) and Rule 10b-5 claim based on monthly active user levels and risk disclosures (Compl. ¶¶ 57-59, 67, 70, 71, 74);

(2) The Court **DENIES** the Motion to Dismiss and Joinder as to Plaintiff's Regulations S-K claim; and

(3) The Court **DENIES** the Motion to Dismiss and Joinder as to Plaintiff's Section 15 claim.

**IT IS SO ORDERED.**

DATED: November 14, 2025

THE HON. CONSUELO B. MARSHALL
United States District Court Judge

---

[11] *See also Ellusionist Cash Balance Plan & Tr. v. Spiegel Acct. Corp.*, 2024 WL 4294645, at *10 (N.D. Cal. Sept. 24, 2024); *In re Progenity, Inc. Sec. Litig.*, 2023 WL 219345, at *16 (S.D. Cal. Jan. 13, 2023); *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *9 (N.D. Cal. Oct. 21, 2020); *In Re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *19 (N.D. Cal. Oct. 31, 2014).